UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELI C.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| *v.* | ) |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| *Defendant.* | ) |

No. 1:21-cv-00245-RLY-MG

**REPORT AND RECOMMENDATION**

In May 2018, Plaintiff Eli C. applied for disability insurance benefits ("DIB") and protectively filed for supplemental social income benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of October 16, 2016. [Filing No. 11-5 at 2-17.] His applications were initially denied on September 27, 2018, [Filing No. 11-3 at 2-23], and upon reconsideration on January 18, 2019, [Filing No. 11-3 at 26-51]. Administrative Law Judge Kevin Martin (the "ALJ") conducted a hearing on January 16, 2020. [Filing No. 11-2 at 34-58.] The ALJ issued a decision on April 7, 2020 concluding that Eli C. was not entitled to receive benefits. [Filing No. 11-2 at 11-32.] The Appeals Council denied review on December 2, 2020. [Filing No. 11-2 at 2-5.] On January 29, 2021, Eli C. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 14.] For the following reasons, the undersigned recommends that the Court remand the decision of the ALJ for further proceedings.

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers*

---

[2] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted. The Court need not include parallel citations unless it notes a distinction between the two sets of regulations.

*v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  The Court does "determine whether the ALJ built

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975

F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled.

*Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).  The

ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a
> severe impairment; (3) whether the claimant's impairment meets or equals one of
> the impairments listed by the [Commissioner]; (4) whether the claimant can
> perform her past work; and (5) whether the claimant is capable of performing work
> in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations

omitted).  "If a claimant satisfies steps one, two, and three, she will automatically be found

disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.

Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of

performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual

functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable

impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.*  The ALJ uses

the RFC at step four to determine whether the claimant can perform her own past relevant work

and if not, at step five to determine whether the claimant can perform other work.  *See* 20 C.F.R.

§ 404.1520(a)(4)(iv), (v).  The burden of proof is on the claimant for steps one through four; only

at step five does the burden shift to the Commissioner.  *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Eli C. was 24 years old on the date of his alleged onset of disability and has a high-school education. [Filing No. 11-2 at 27.] He previously worked as a janitor, tree cutter, and laborer at a sawmill. [Filing No. 11-2 at 26-27.] Eli C.'s original application alleges that he can no longer work because he was involved in an accident on October 15, 2016 in which he jumped from a moving vehicle that was travelling about 40 mph, and, as a result, he now suffers from a traumatic brain injury, frontal lobe injury, short-term memory loss, headaches, vision problems, dizziness and equilibrium issues, weakness on the left side of his body, anxiety, depression, bipolar disorder, and schizophrenia and also sleeps a lot and has poor temper control. [*See* Filing No. 11-6 at 19.] The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) and concluded that Eli C. was not disabled. [Filing No. 11-2 at 28.] Specifically, the ALJ found as follows:

- At Step One, Eli C. had not engaged in substantial gainful activity[3] during the period at issue, even though Eli C. worked after the alleged onset date, finding he made an "unsuccessful work attempt." However, at the time of his hearing, Eli C. was working part-time at a grocery store. [Filing No. 11-2 at 14.]

- At Step Two, Eli C. "has the following severe impairments: headaches status post traumatic brain injury; mood disorder/psychotic disorder secondary to traumatic brain injury; bipolar disorder; and substance abuse." [Filing No. 11-2 at 14.]

- At Step Three, Eli C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 15.] As to the "paragraph B" criteria for Listings 12.02 and 12.04, the ALJ found that Eli C. had "moderate" limitations in each of the four areas. [Filing No. 11-2 at 16-17.]

- After Step Three but before Step Four, Eli C. had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he needs to avoid concentrated exposure to loud noise and bright lights such as direct sunlight; able to understand, remember and carry out instructions for simple work tasks in a work setting requiring no more than occasional, superficial interactions with coworkers and supervisors for purposes of performing simple work tasks and requires no more than incidental interaction with the public in the work setting and is able to tolerate simple change in the routine work setting." [Filing No. 11-2 at 18.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Eli C.'s RFC, he was able to perform his past work as a janitor. [Filing No. 11-2 at 26.]

- Alternatively, at Step Five and relying on the VE's testimony and considering Eli C.'s age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that he could perform, such as laundry aide and industrial cleaner. [Filing No. 11-2 at 27-28.]

## III.
### DISCUSSION

Eli C. argues the ALJ erred in the following ways: (1) the ALJ's subjective symptom analysis did not comply with SSR 16-3p; (2) the hypothetical posed to the VE did not sufficiently

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

account for his moderate limitations in concentration, persistence, or pace; and (3) the ALJ failed

properly analyze certain medical opinions.  The undersigned will consider each of the arguments

in turn.

### A.  Subjective Symptom Analysis

Eli C. argues that the ALJ failed to adequately support his conclusion that Eli C.'s

statements concerning the intensity, persistence, and limiting effects of his symptoms were not

entirely consistent with the medical evidence and other evidence.  [Filing No. 13 at 11.]  In

particular, Eli C. takes issue with the ALJ's citation to record evidence that Eli C. told medical

providers that he wanted to receive disability benefits because he did not like the jobs that he was

able to secure after his accident and that he wanted to receive benefits so that he could go to college

and get a better job.  [Filing No. 13 at 11 (citing Filing No. 11-2 at 26).]  He also assails the ALJ

for citing evidence of Eli C.'s efforts to obtain employment to support the subjective symptom

finding.  He argues that this evidence does not support the ALJ's subjective symptom finding,

stating that "[i]t does not matter that [Eli C.] knew what his monthly benefit payments would be,

or that he wanted to get a better job and make more money."  [Filing No. 13 at 12.]  Instead, Eli

C. argues, the record shows that while Eli C. has obtained jobs since his accident, he has difficulty

keeping jobs.  [Filing No. 13 at 12-14.]  He further contends that the ALJ should have addressed

Eli C.'s inability to hold a job.  [Filing No. 13 at 14.]

In response, the Commissioner argues that it was appropriate for the ALJ to consider

statements by Eli C. regarding his desire to work and the nature of the job that he wanted.  [Filing

No. 15 at 13 (citing 20 C.F.R. §§ 404.1566(c)(8) & 404.966(c)(8)).]  And, the Commissioner says,

it was also appropriate for the ALJ to consider Eli C.'s post-accident work as part of a subjective-

symptom analysis.  [Filing No. 15 at 14 (citing a series of cases for the proposition that an ALJ

may appropriately consider post-onset work for purposes of assessing a claimant's subjective symptoms).] The Commissioner also points out that the ALJ noted inconsistencies in the record evidence for the reasons why Eli C.'s post-onset jobs ended. [Filing No. 15 at 15.] The Commissioner contends that the ALJ satisfied all the requirements of SSR 16-3p. [Filing No. 15 at 17-18.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, the ALJ must provide specific reasons supporting his or her evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

SSR16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process, and the SSA clarified that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ "must determine whether a claimant has a medically determinable impairment that could reasonably be expected to produce an individual's symptoms." *Srp v. Colvin*, 2016 WL 7507781,

at *2 (C.D. Ill. July 14, 2016).  If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ "must consider all of the evidence in the record to determine the intensity, persistence, and limiting effects of the claimant's symptoms."  *Id.*  To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4.

Here, at step one, the ALJ found that Eli C.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [Filing No. 11-2 at 25.]  However, at step two, Eli C.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Filing No. 11-2 at 25.]  Beyond this statement, the ALJ provided the following "specific reasons" to support his finding at step two.

> The record suggests somewhat of a misperception of the purposes of Social Security disability benefits. He repeatedly expressed dissatisfaction with the types of jobs he was able to secure. He told Dr. Duncan that he hated working, which was why he was seeking disability benefits (Ex. 10F, p. 2). On the other hand, he indicated that he wanted to get a better job. At the time, he was making only $8.00 per hour, although, apparently before his accident, he was earning substantially more (Id.). Later, with Dr. Katta-Charles, he stated that, if his applications for disability were approved, he would receive $1,436.00 in benefits per month (Ex. 11F, p. 9). Back with Dr. Duncan, the claimant reported that he did not want to be on disability forever (Ex. 10F, p. 4). Rather, he just wanted to receive benefits "short-term" so that he could go to college and get a better job (Id.).

> Significantly, the claimant told Ms. Meyer on February 26, 2019, that, as soon as potential employers learn that he had suffered a brain injury, they would not hire him (Ex. 16F, p. 1). Indeed, he stated that he was seeking disability benefit because employers would not hire him for that reason (Ex. 16F, p. 2: Ms. Meyer noted, "Currently wants to have a job but reported that he is not able to convince people to give him a chance as he has a brain injury"). This evidence is significant because

it reflects a belief on the claimant's part that he is capable of performing some type of work. In determining questions of disability, "[t]he hiring practices of employers" are irrelevant (See 20 CFR 404.1566(c)(3) and 416.966(c)(3)). Rather, the question is whether work exists that is within an individual's residual functional capacity, age, education, and work experience to perform.

[Filing No. 11-2 at 26.]   Thus, two specific reasons provided by the ALJ are that (1) Eli C. expressed a motive for seeking disability benefits that suggests he can still perform work; and (2) Eli C. sought jobs and expressed a desire to work which is inconsistent from a claim of being unable to work.

Looking first at the latter reason—that Eli C. expressed a desire to work—such evidence does not support a finding of inconsistency. The Seventh Circuit has made clear that a desire to return to work does not undercut a claimant's subjective symptoms. *See Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018) ("[T]he job search, on its own, is no evidence that [claimant] embellished her pain because a claimant who looks for work after claiming a painful disability may have a strong work ethic or overly-optimistic outlook rather than an exaggerated condition.") (internal quotation marks omitted). This is so because "[t]here is no inherent inconsistency in being both employed and disabled." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) (citing *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995)). *See also Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017) ("A positive work history makes a claimant *more* credible, and a desire to resume work similarly makes a claimant more credible, not less.") (internal citation omitted) (emphasis original). Thus, the evidence of Eli C.'s desire to work cannot support the ALJ's subjective symptom finding.

Turning back to the other specific reason given by the ALJ—Eli C.'s stated motive for seeking disability; namely, that he could not work his preferred jobs—such evidence can be relevant to assessing subjective symptoms. The Seventh Circuit has held that it is appropriate for

9

ALJs to consider evidence of a claimant's motivations in applying for disability benefits. *See Primm v. Saul*, 789 F. App'x 539, 545 (7th Cir. 2019) (approvingly noting that the ALJ "observed that [claimant] may have lost motivation to find work in 2011 after he began receiving $300 per week and then a lump sum of approximately $300,000 in worker's compensation"). This is true here, where Eli C. has told others that one reason that he is applying for disability benefits is because he cannot obtain employment of his liking post-accident. *Cf.* 20 C.F.R. § 404.1566(c)(8) ("We will determine that you are not disabled if your [RFC] and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because … [y]ou do not wish to do a particular type of work."). But, in so doing, the ALJ was required to address conflicting lines of evidence in the record. An ALJ may not ignore lines of evidence contrary to his or her ruling. *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). The ALJ had an obligation to address evidence that Eli C. was unable to sustain employment following the accident, including the reasons for terminations.

Furthermore, while the ALJ identified the above reasons and summarized the medical evidence, the ALJ did not then connect the findings to Eli C.'s subjective symptom statements. *See, e.g.*, *Push v. Saul*, 2021 WL 3116285, at *4 (N.D. Ind. June 11, 2021) (remanding where the ALJ did not provide analysis of "which of [claimant's] subjective symptoms were inconsistent with which portions of the medical evidence"). "It is not enough to simply say that the evidence conflicts with the claimant's testimony; the ALJ must show *how* it conflicts." *Ralston v. Saul*, 2019 WL 5558798, at *3 (N.D. Ind. Oct. 29, 2019).

Because the ALJ's subjective symptom finding lacks support and is therefore patently wrong, *Shidler*, 688 F.3d at 310-11, the undersigned **RECOMMENDS** the Court **REVERSE and**

**REMAND** for further proceedings so that ALJ can address Eli C's subjective symptoms as set forth in SSR 16-3p.

**B. Mental RFC Finding[4]**

Eli C. next appears to assert several arguments related to the ALJ's mental RFC finding. First, Eli C. says that the ALJ merely "summarizes the medical evidence of record and simply concludes that [Eli C.'s] RFC is supported by the record as a whole." [Filing No. 13 at 22.] He says that "[t]his is the very type of perfunctory and conclusory statement ALJs are not permitted to make without some analysis of the evidence." [Filing No. 13 at 22 (citing cases challenging listed impairment findings).] He further states that "[t]he ALJ never explains the rationale behind his finding of the RFC." [Filing No. 13 at 22.] In particular, Eli C. argues that the ALJ did not adequately support his finding that Eli C. was only "moderately" limited in the areas of concentrating, persisting and pace ("CPP") and interacting with others ("IWO"). [Filing No. 13 at 22-25.] Second, Eli C. assails the hypothetical posed to the VE as it relates to Eli C.'s moderate limitations in the area of CPP and says that the ALJ's RFC finding that Eli C. is limited in understanding, remembering, and carrying out instructions for "simple work tasks" fails to account for his moderate limitations in CPP. [Filing No. 13 at 27.] Specifically, he says that the ALJ's limitation does not "address[] the impact of the mental limitations such as [Eli C.'s] ability to perform activities within a schedule or maintain attention and focus" and says the ALJ "should have discussed [Eli C.'s] ability to complete simple tasks for sustained periods without losing attention or needing redirection." [Filing No. 13 at 27.]

---

[4] This assignment of error is poorly organized in Eli C.'s briefing, covering multiple subtopics—complaining about both the listing analysis at Step Three and the subsequent RFC finding—without clear delineation of the issues he is raising. [Filing No. 13 at 21-30.] The undersigned has attempted to disentangle the arguments raised by Eli C., but counsel should take care in the future to identify the alleged errors clearly.

The Commissioner responds by pointing out that as the claimant, Eli C. has the burden of proving an RFC more restrictive than that adopted by the ALJ.  [Filing No. 15 at 19.]  The Commissioner then points out that the ALJ provided a lengthy discussion about the evidence supporting the moderate limitations in the areas of social interactions and CPP, including that the state agency consultants' findings of moderate limitations.  [Filing No. 15 at 19.]  The Commissioner further argues that the ALJ provided extensive reasoning for his RFC findings, reviewing the medical evidence, Eli C.'s subjective complaints, and medical opinions.  [Filing No. 15 at 19-20.]  The Commissioner then notes that despite his contention that he was more than moderately limited in the areas of CPP and IWO, Eli C. "fails to identify *any* specific work-related restrictions that the ALJ should have included in the RFC," and this omission is fatal to his claim under Seventh Circuit precedent.  [Filing 15 at 21-22 (collecting cases).]  The Commissioner says that "by not identifying any specific [CPP] limitations that he allegedly has or that the evidence supports, [Eli C.] has failed to show the RFC does not adequately account for his demonstrated psychological symptoms."  [Filing No. 15 at 22 (internal quotation marks and alteration omitted).]

### A.  Moderate Limitations in CPP and IWO

First, to the extent that Eli C. is arguing that the ALJ failed at Step Three to sufficiently articulate his reasoning for finding moderate limitations in the areas of IWO and CPP, the undersigned rejects that argument.  "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."  *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).

Here, the ALJ provided detailed explanations at Step Three as to why Eli C.'s mental impairments did not meet or equal Listings 12.02 or 12.04.  The ALJ reviewed the opinions of

12

state agency consultants Ann Lovko, PhD, and Kari Kennedy, PsyD, who found Eli C. moderately limited in certain areas, including CPP and IWO. [Filing No. 11-2 at 16.] The ALJ also reviewed the opinion of Eli C.'s therapist, Elaine Meyer, LCSW, and explained why he was not crediting her assessment in full. [Filing No. 11-2 at 16.] In the area of IWO, the ALJ found Eli C. to be moderately limited citing evidence that he visited with family and had positive interactions with members of his church. [Filing No. 11-2 at 17.] As for the CPP, the ALJ found Eli C. moderately limited and cited evidence that he watches television, reads the Bible, and plays video games. [Filing No. 11-2 at 17.] Thus, the undersigned finds no error with the moderate limitation findings. Of course, the ALJ is free to reconsider these issues on remand.

### B. CPP Limitation in the Hypothetical

Next, the Court addresses Eli C.'s argument that the RFC (and thus the hypothetical to the VE) did not adequately account for his moderate limitations in CPP. The RFC "represents the maximum a person can do—despite his limitations—on a regular and continuing basis." *Pepper, 712 F.3d at 362*. A court must uphold an ALJ's RFC determination "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit a meaningful review." *Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012).

CPP "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Supt. P, App. 1 § 12.00E(3). "[W]hen an ALJ finds there are documented limitations of [CPP], the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019). Generally, employing terms like "simple, repetitive tasks" on their own will not properly account for problems captured by CPP. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). This is because "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do

so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id.*

The ALJ's RFC limited Eli C. to "simple work tasks in a work setting requiring no more than occasional, superficial interactions with coworkers and supervisors for purposes of performing simple work tasks" and "no more than interaction with the public in the work setting." [Filing No. 11-2 at 18.] During the hearing, the ALJ posed a hypothetical question to the VE using language nearly identical to this mental RFC finding. The VE concluded that Eli C. could perform his prior work as a janitor with these CPP restrictions in combination with Eli C.'s other restrictions. [Filing No. 11-2 at 54.] The ALJ then added the additional limitation that the individual "would additionally be off task 20% of the workday on an ongoing basis." [Filing No. 11-2 at 55-56.] The VE testified that no jobs would be available in the national economy with this additional limitation. [Filing No. 11-2 at 56.]

The ALJ found that Eli C. had a moderate CPP limitation but failed to articulate, beyond the boilerplate routine language frowned upon by the Seventh Circuit, how this limitation impacted his functional capacity. Notably, the RFC and accompanying explanation do not address Eli C.'s ability to stay on task for a sustained period. The undersigned is unable to construct a logical bridge between the moderate limitation finding and the RFC without a more robust explanation from the ALJ with supporting evidence. *See Ian K. v. Kijakazi*, No. 1:20-1918-SEB-MPB, 2021 WL 4177202, at *4-5 (S.D. Ind. Aug. 13, 2021), *report and recommendation adopted*, 2021 WL 4171429 (S.D. Ind. Sept. 14, 2021) (finding RFC inadequately addressed moderate limitations in CPP where the RFC limited claimant to simple, routine tasks free of fast-paced production).

The Commissioner's argument that Eli C.'s RFC argument fails because he has not identified greater CPP limitations than those adopted by the ALJ has some appeal. The difficulty

in applying such a rule here is the lack of explanation provided by the ALJ.  The ALJ seemed to recognize *some* record evidence of Eli C.'s CPP challenges with respect to staying on task when, in formulating an additional hypothetical for the VE, he incorporated the additional limitation of being off-task 20% of the time.  The VE opined that a person so limited would lack the functional capacity to sustain any employment.  But, the ALJ failed to explain why the ALJ found this limitation inapplicable to Eli C., "leaving the RFC altogether uniformed by considerations of off-task time or unplanned leave." *Crump*, 932 F.3d at 570.  The reviewing court is thus left to guess why no time off-task limitations were included in the RFC.  *See Kukec v. Berryhill*, 2017 WL 5191872, at *4 (N.D. Ill. Nov. 9, 2017) (remanding where ALJ posed 20%-off-task hypothetical to VE and then "failed to come to any conclusion regarding the off-task time [the ALJ] asked the VE to consider").  "While an ALJ is not bound to any hypothetical, it is clear here the ALJ considered the issue of off-task time, but then failed to provide any analysis of whether … [claimant] was limited by any off-task allowances and, if so, for how long." *Jacob D. v. Kijakazi*, 2021 WL 3674610, at *5 (N.D. Ill. Aug. 19, 2021).  In light of the above, undersigned **RECOMMENDS** the Court **REVERSE and REMAND** for further proceedings so that the ALJ can fully consider and articulate his findings regarding any time-off-task limitations.

### C.  Medical Opinions

#### 1.  Dr. Katta-Charles

Eli C. contends that the ALJ erred when he rejected the opinion of his treating physician, Dr. Sheryl Katta-Charles, M.D., that Eli C. cannot work because the ALJ found the opinion was an issue reserved to the Commissioner.  [Filing No. 13 at 31.]  While Eli C. acknowledges that issues of disability are reserved for the Commissioner, he contends that an ALJ cannot ignore them.  [Filing No. 13 at 31.]

In response, the Commissioner correctly points out that Eli C. has cited outdated cases that predate the implementation of the new rules regarding medical opinions. [Filing No. 15 at 25.] The Commissioner says that under the new regulations, an ALJ need not analyze matters reserved for the Commissioner and cites 20 C.F.R. § 404.1520b(c) which expressly provides that ALJs "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." [Filing No. 15 at 25.]

"[T]he ultimate determination of disability is reserved for the Commissioner, and summarily asserting that the claimant is disabled does not suffice under the Commissioner's regulations." *Albert v. Kijakazi*, 34 F.4th 611, 616 (7th Cir. 2022). *See* 20 C.F.R. § 404.1520b(c)(3) (specifying that "[s]tatements that you are or are not disabled," or statements about whether an individual can or cannot work constitute evidence that "is inherently neither valuable nor persuasive"). Because Eli C. filed his application after March 2017, 20 C.F.R. § 404.1520c governs his claim and provides that ALJs will evaluate all medical opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). However, if a statement is reserved for the Commissioner, an ALJ need not evaluate the opinion under § 404.1520c because the regulations are clear that the ALJ "will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c).

On October 11, 2018 Dr. Katta-Charles wrote in a clinic note that Eli C. "is unable to work due to uncontrolled mania – agree with applying for SSDI." [Filing No. 11-10 at 390.] In a follow-up March 27, 2019 clinic visit, Dr. Katta-Charles wrote that "[d]ue to patient's behavioral limitations, he cannot be gainfully employed at this time. I am in support of his plan to appeal

denial of his disability claim." [Filing No. 11-11 at 347.]  The ALJ stated that he was "not persuaded by Dr. Katta-Charles' observations.  In finding that the claimant cannot work at all, Dr. Katta-Charles has stated an opinion on an issue exclusively reserved to the Commissioner.  Such a conclusory statement is not entitled to controlling persuasive authority or special significance." [Filing No. 11-2 at 25.]

The ALJ correctly gave these opinions by Dr. Katta-Charles no weight and did not analyze them as a medical opinion because they are statements about whether Eli C. can or cannot work. *See* 20 C.F.R. § 404.1520b(c)(3).  Eli C. cites no authority to the contrary and instead cites law that pre-dates the new rules on medical opinions.  Therefore, the ALJ did not error.

### 2.  Therapist Meyer

Eli C. also contends that the ALJ erred when he found opinions about Eli C.'s work-related restrictions offered by Eli C.'s therapist, Elaine Meyer, LCSW, were not supported by the record. [Filing No. 13 at 32.]  He says it was wrong for the ALJ to discount Ms. Meyer's opinion because it relied too heavily on Eli C.'s subjective reports.  [Filing No. 13 at 32-33.]  Furthermore, he argues, the ALJ erred when he referenced that Ms. Meyer's opinion was offered through a check-box form.  [Filing No. 13 at 32.]

In response, the Commissioner argues that the ALJ appropriately addressed Ms. Meyer's opinion under 20 C.F.R. § 404.1520c(c)(2).  [Filing No. 15 at 26-27.]  The Commissioner points out that the ALJ's decision discussed the opinions of the state agency consultants and medical evidence that suggested that Eli C. was not as limited as Ms. Meyer found.  [Filing No. 15 at 26.] The Commissioner also notes that the ALJ found that Ms. Meyer's opinion about Eli C.'s abilities conflicted with her own treatment records and that Ms. Meyer "cited no specific evidence" to support her conclusions.  [Filing No. 15 at 27.]  The Commissioner also says it was appropriate

for the ALJ to discount Ms. Meyer's opinion for relying on Eli C.'s subjective complaints rather than objective medical evidence.  [Filing No. 15 at 27.]

As discussed above, because Eli C. filed his application after March 2017, § 404.1520c provided the framework for the ALJ's evaluation of medical opinions.  Under this framework, ALJs will evaluate all medical opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion.  20 C.F.R. § 404.1520c(c).  The opinion of a claimant's treating physician no longer receives controlling weight.  20 C.F.R. § 404.1520c(a).  "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record."  *Albert*, 34 F.4th at 614 (internal quotation marks omitted).  These are the factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b).

For a provider's opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations."  20 C.F.R. §§ 404.1520c(c)(1).  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §404.1520c(c)(1).  Similarly, for a provider's opinion to be consistent, it must be, reductively, consistent with the record.  20 C.F.R. § 404.1520c(c)(1).  "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

18

Ms. Meyer completed a "Mental Impairment Questionnaire" assessing Eli C.'s abilities to work in February 2020.  [Filing No. 11-11 at 363.]  The questionnaire included a check-box evaluation for 25 categories addressing Eli C.'s mental abilities.  [Filing No. 11-11 at 366-67.]  For 19 categories, Ms. Meyer rated Eli C. as "Unable to meet competitive standards" for work, and in 6 categories she rated him as "No useful ability to function."  [Filing No. 11-11 at 366-67.]  Ms. Meyer also completed a check-box rating of Eli C.'s "paragraph B" functional limitations.  [Filing No. 11-11 at 368.]  She opined that Eli had "extreme" limitations in the areas of CPP; adapting or managing oneself; and understanding, remembering, or applying information.  [Filing No. 11-11 at 368.]  She found Eli C. had a "marked" limitation in the area of IWO.  She also opined that Eli C. would be absent from work more than four days per month and that he "cannot work full time." [Filing No. 11-11 at 368.]  In a written narrative, Ms. Meyer stated: "Unable to maintain full time employment.  Loses jobs due to problems with multi-tasking.  Impulsive behaviors.  His current job due to community support and family connection.  Unable to maintain full day.  Forgetful. Needs constant reminders.  Needs daily help."  [Filing No. 11-11 at 369.]

The ALJ summarized Eli C.'s history with Ms. Meyer.  After reviewing and explaining the record in detail, the ALJ stated that Ms. Meyer's opinion stood "[i]n sharp contrast" to the findings of the state agency consultants.  [Filing No. 11-2 at 16.]  The ALJ said that he was "not persuaded by Ms. Meyer's assessment of the paragraph B criteria."  [Filing No. 11-2 at 16.]  He supported that finding with the following analysis:

> Ms. Meyer is a social worker and the record shows that she has a limited treatment history with the claimant, although she reported that she sees him twice a month. Ms. Meyer's reports of extreme restrictions in nearly all functional categories appear to be based more upon the claimant's subject reports than on specific clinical observations and findings.  Moreover, the claimant self-reports are not altogether consistent or reliable.  Rather, the [state agency consultants'] assessments of the paragraph B criteria a[re] reliable and based on a review of the overall record.

[Filing No. 11-2 at 16 (internal citations omitted).]

***

As discussed earlier, Ms. Meyer's extreme limitations are not supported by the objective record, including her own treatment record. In filling out the check-box form, she appears to have based her assessment on the claimant's subjective reports of his symptoms rather than on clinical observations or objective findings. In her questionnaire responses, Ms. Meyer cited no specific evidence to support her final assessment that the claimant is simply unable to work full-time. Again, such a conclusory statement is not entitled to controlling persuasive authority or special significance.

[Filing No. 11-2 at 25.]

The undersigned finds that the ALJ's analysis of Ms. Meyer's opinion satisfies the requirements of 20 C.F.R. § 404.1520c(b). For an opinion to be consistent it must be in line "with evidence from other medical sources and nonmedical sources." 20 C.F.R. 404.1520c(c)(2). The ALJ analyzed the consistency of Ms. Meyer's opinion by pointing to objective evidence in the record, including cognitive testing, improved symptoms with medication, and the ability to work part-time, that conflicted with the severe limitations. [Filing No. 11-11 at 26-27.] The ALJ also cited the opinions offered by the state agency consultants and Dr. Scott Duncan, PhD, who conducted a consultative mental status examination.

The ALJ then properly analyzed supportability of the opinion by noting that Ms. Meyer's opinion does not reference any objective evidence, instead relying on Eli C.'s subjective statements. *See* 20 C.F.R. § 404.1520c(c)(1) (for an opinion to be supportable it must be anchored in "objective medical evidence and supporting explanations"). Reliance on subjective symptoms is an appropriate consideration. *See, e.g.*, *David K. v. Kijakazi*, 2021 WL 5755367, at *9 (N.D. Ind. Dec. 3, 2021) (finding that a provider's degree of reliance on subjective complaints is a proper consideration for analyzing supportability). Therefore, the undersigned finds no error with the ALJ's analysis of Ms. Meyer's opinion.

20

### 3. Dr. Montag

Although not well developed in Eli C.'s briefing, Eli C. also appears to argue that the ALJ erred by not addressing a statement from Dr. Nathaniel Montag, D.O., the consultative examiner hired to conduct a *physical* examination of Eli C.  [Filing No. 13 at 33-34.]  Dr. Montag found that Eli C. "should be able to walk for two out of eight hours in a day," "probably could carry less than ten pounds frequently and could carry more than ten pounds on occasion."  [Filing No. 11-10 at 375.]  Dr. Montag then included the following statement: "I do believe that he does have longstanding deficits related to frontal lobe trauma that he obtained secondary to his traumatic brain injury that do in fact limit him in maintaining but not obtaining a job.  He should likely obtain a psychological evaluation to see the extent of these in his pursuant of Social Security Disability."  [Filing No. 11-10 at 375.]  In fact, a thorough psychological evaluation was then performed by Dr. Scott Duncan, PhD a few days later.  [Filing No. 11-10 at 377-81.]

Eli C. accuses the ALJ of failing to address Dr. Montag's "opinion" that Eli C.'s impairments "limit him in maintaining but not obtaining a job."  First, this is not an opinion.  A "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations" in "[y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."  20 C.F.R. § 404.1513(a)(2)(ii).  Dr. Montag's statement does not address any of these considerations. Second, it is also not relevant evidence because it is a statement about "whether an individual can or cannot work."  *See* 20 C.F.R. § 404.1520b(c)(3).  Third, Dr. Montag only offered an opinion about physical limitations and expressly stated that he was not offering an opinion about mental

limitations, instead recommending that an expert in that field perform such an examination, which occurred. [Filing No. 11-10 at 375.]   Therefore, the ALJ did not error by not addressing this statement.

## IV.
### CONCLUSION

   For the reasons detailed above, the undersigned recommends the Court **REVERSE** the ALJ's decision denying Eli C. benefits and **REMAND** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

   Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

 Date: 7/15/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**